*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0079P (6th Cir.)
File Name:  01a0079p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ALTON COLEMAN,
          *Petitioner-Appellant,*

          *v.*                              No. 98-3546

BETTY MITCHELL, Warden,
          *Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
Nos. 94-00863, 94-00864—Sandra S. Beckwith,
District Judge.

Argued:  December 5, 2000

Decided and Filed:  March 26, 2001

Before:  MERRITT, RYAN, and BOGGS, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:**  David C. Stebbins, Columbus, Ohio, for
Appellant.  Charles L. Wille, OFFICE OF THE ATTORNEY
GENERAL OF OHIO, Columbus, Ohio, for Appellee.
**ON BRIEF:** David C. Stebbins, Columbus, Ohio, Fredric F.
Kay, FEDERAL PUBLIC DEFENDER, Tucson, Arizona,
Dale A. Baich, OFFICE OF THE FEDERAL PUBLIC
DEFENDER FOR THE DISTRICT OF ARIZONA, Phoenix,

Arizona, for Appellant. Charles L. Wille, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellee.

———————————

**OPINION**

———————————

RYAN, Circuit Judge. Petitioner Alton Coleman has been convicted of murder in an Ohio state court and has been sentenced to death. He now appeals the district court's order dismissing his *habeas corpus* petition brought pursuant to 28 U.S.C. § 2254. Coleman raises several assignments of error, the most serious of which are: (1) the district court erred when it held that Coleman had procedurally defaulted on 34 of the 50 claims raised in his *habeas* petition; (2) his constitutional due process rights were violated because of prosecutorial misconduct and the introduction of "other acts" evidence; and (3) he was denied effective assistance of counsel at sentencing because his attorneys failed to fully investigate his background and mental health for purposes of offering evidence in mitigation. For the reasons discussed below, we will affirm the judgment of the district court.

### I.

### A.

On July 13, 1984, Coleman and his girlfriend, Debra D. Brown, arrived via bicycle in Norwood, Ohio, and stopped at the home of Harry and Marlene Walters around 9:30 a.m. After inquiring about a camping trailer the Walterses had for sale, Coleman and Brown were invited into the Walterses' home. Once inside, Coleman picked up a wooden candlestick and began striking Mr. Walters on the back of the head.

When the Walterses' daughter, Sheri, arrived home from work around 3:45 p.m. the same day, she found the house splattered with blood and her parents' motionless bodies lying at the bottom of the basement steps. Mr. Walters, barely

omitted.) Nothing in the trial record that memorializes Coleman's extensive participation in the trial suggests that he lacked a "rational and factual understanding" of the proceedings against him and the potential impact of utilizing a residual doubt theory at sentencing.

While recent decisions from this court have emphasized that failure to present mitigating evidence at sentencing may constitute ineffective assistance of counsel under the Sixth Amendment, counsel may nevertheless make a reasonable decision that investigation is not necessary. *See Strickland*, 466 U.S. at 691. Indeed, the *Strickland* Court noted that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Id.*

Coleman admits that he did not cooperate with counsel regarding the investigation and identification of mitigating evidence; imposed restrictions upon counsel; and refused to submit to further psychological or psychiatric testing. After presenting Coleman with his options, counsel proceeded with the residual doubt theory *only* at Coleman's direction. Coleman was competent to stand trial and competent to assist his lawyer with strategic choices. He repeatedly advised his lawyer to proceed with the residual doubt theory and not to investigate possible mitigating factors. An attorney's conduct is not deficient simply for following his client's instructions. *See Jones*, 463 U.S. at 751-52. The petitioner was not deprived of his Sixth Amendment right to effective assistance of counsel at sentencing under the *Strickland* standard.

### VIII.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

And, the *Mapes* court also stated that "when a client faces the prospect of being put to death unless counsel obtains and presents *something* in mitigation, minimal standards require some investigation." *Id.* Recently, in *Carter v. Bell*, 218 F.3d 581, 600 (6th Cir. 2000), and *Skaggs v. Parker*, 235 F.3d 261, 269, 271 (6th Cir. 2000), this court has held that failure to investigate possible mitigating factors and failure to present mitigating evidence at sentencing *can* constitute ineffective assistance of counsel under the Sixth Amendment.

But, this case is distinguishable from *Mapes*, *Carter*, and *Skaggs* because after the various options for proceeding in the sentencing phase of the case were explained to him, Coleman directed his counsel to proceed with the residual doubt theory, which did not include the introduction of mitigating evidence relating to Coleman's past mental history. Coleman now argues that his counsel was ineffective for following his instructions because counsel should have realized that he lacked the competence needed to choose an appropriate sentencing strategy.

It is well established that a criminal defendant may not be tried unless he is competent. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). To be competent for trial, a defendant must have "sufficient ability to consult with his lawyers and a reasonable degree of rational and factual understanding of the proceedings against him." *United States v. Ford*, 184 F.3d 566, 580 (6th Cir. 1999), *cert. denied*, 528 U.S. 1161 (2000). *Godinez* clarified that the level of competence needed to waive counsel is the same as that needed to stand trial. *See Godinez*, 509 U.S. at 399.

We believe that the *Godinez* standard should also apply here to determine whether Coleman was competent enough to instruct his counsel as to the appropriate strategy to pursue at sentencing. As the district court recognized, "Coleman acted as co-counsel to the extent of addressing the jury, examining at least one witness, and participating in side-bench conferences between counsel and the judge, as well as presenting his own motions." (Internal quotation marks

breathing, had his hands handcuffed behind his back and his feet tied together with electrical cords. Mrs. Walters, already dead, had a bloody sheet covering her head. Her hands were bound behind her back and her feet were tied together with electrical cords. At trial, expert testimony indicated that Mrs. Walters had been struck on the head approximately 25 times. Twelve lacerations, several made with a pair of vise grips, covered her face and scalp. The back of her skull was smashed to pieces, and parts of both her skull and brain were missing. Mr. Walters survived the beating with some degree of brain damage.

Money, jewelry, shoes, and the family car had been stolen. Two bicycles were found abandoned in the Walterses' yard, and Coleman's fingerprints were found on a broken soda bottle in the living room.

Coleman and Brown have been implicated in several murders, rapes, kidnappings, and armed robberies that were committed in several Midwestern states during the summer of 1984.

## B.

A Hamilton County grand jury indicted Coleman on the following five counts: (1) aggravated murder while committing aggravated burglary; (2) aggravated murder while committing aggravated robbery; (3) attempted aggravated murder; (4) aggravated robbery; and (5) aggravated burglary. Following trial, an Ohio jury returned a verdict of guilty on all charges and Coleman was sentenced to death for the aggravated murder of Mrs. Walters. Coleman's judgment of conviction and his death sentence were affirmed by the Ohio Court of Appeals, *State v. Coleman*, Nos. C-850340, B-842559A, 1986 WL 14070 (Ohio Ct. App. Dec. 10, 1986), and the Ohio Supreme Court, *State v. Coleman*, 525 N.E.2d 792 (Ohio 1988). The United States Supreme Court denied *certiorari*, *Coleman v. Ohio*, 488 U.S. 900 (1988).

Coleman then petitioned the trial court for post-conviction relief pursuant to Ohio Rev. Code Ann. § 2953.21. The trial

court, without conducting an evidentiary hearing, adopted the state's proposed findings of fact and conclusions of law and denied relief. The Ohio Court of Appeals affirmed the trial court's decision, *State v. Coleman*, No. C-900811, 1993 WL 74756 (Ohio Ct. App. Mar. 17, 1993), and the Ohio Supreme Court dismissed Coleman's appeal, ruling that it lacked jurisdiction, *State v. Coleman*, 619 N.E.2d 419 (Ohio 1993).

On July 9, 1993, Coleman filed an Application for Delayed Reconsideration in the Ohio Court of Appeals alleging that his counsel on direct appeal had been constitutionally ineffective. The Court of Appeals denied the application, ruling that Coleman had failed to show good cause for filing it more than 90 days after the court's judgment. *See* Ohio App. R. 26(B)(2)(b). On October 7, 1994, the Ohio Supreme Court affirmed the Court of Appeals' decision, denied Coleman's request for reconsideration, and revoked the stay of execution on Coleman's death sentence.

On January 6, 1995, Coleman filed his *habeas corpus* petition in federal court. He brought 50 assignments of error. The district court concluded that 34 of the assignments of error were procedurally barred because Coleman had failed to raise them on direct appeal in state court. The remaining assignments of error were found to be without merit.

On February 13, 1995, the district court granted Coleman's motion to consolidate three *habeas* cases: the sentence of death for the murder of Mrs. Walters; a second sentence of death from his conviction for another murder in Ohio; and a conviction for interstate kidnapping. On February 13, 1998, the district court denied, *inter alia*, Coleman's *habeas corpus* petition pertaining to the murder of Mrs. Walters.

Coleman timely appealed the district court's judgment in the consolidated case, and this court then severed Coleman's appeal. Consequently, this appeal pertains only to the denial of *habeas corpus* relief in the capital case involving the death of Mrs. Walters.

somewhere between 'beyond a reasonable doubt' and 'absolute certainty.'" *Franklin v. Lynaugh*, 487 U.S. 164, 188 (1988) (O'Connor, J., concurring). In *State v. McGuire*, 686 N.E.2d 1112 (Ohio 1997), the Ohio Supreme Court explained:

> Residual or lingering doubt as to the defendant's guilt or innocence is not a factor relevant to the imposition of the death sentence because it has nothing to do with the nature and circumstances of the offense or the history, character, and background of the offender. . . .
>
> Our system requires that the prosecution prove all elements of a crime beyond a reasonable doubt. Therefore, it is illogical to find that the defendant is guilty beyond a reasonable doubt, yet then doubt the certainty of the guilty verdict by recommending mercy in case a mistake has occurred. Residual doubt casts a shadow over the reliability and credibility of our legal system in that it allows the jury to second-guess its verdict of guilt in the separate penalty phase of a murder trial. . . .
>
> *Residual doubt is not an acceptable mitigating factor under R.C. 2929.04(B), since it is irrelevant to the issue of whether the defendant should be sentenced to death.*

*Id.* at 1123 (emphasis added) (citations omitted).

We recognized in *Mapes v. Coyle*, 171 F.3d 408 (6th Cir.), *cert. denied*, 528 U.S. 946 (1999):

> Under the Ohio statute, a capital defendant found guilty of a death specification has to present *some* mitigating evidence in order to avoid the death penalty. If a jury has nothing to weigh against the aggravating circumstance, it almost certainly must find that the aggravating circumstance outweighs the (nonexistent) mitigating circumstances, and recommend death.

*Id.* at 426.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

When elaborating on the "prejudice" prong of this test, the *Strickland* Court stated:

It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. . . .

. . . .

. . . [T]he appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution, and in the test for materiality of testimony made unavailable to the defense by Government deportation of a witness. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 693-94 (citations omitted).

In this case, counsel proceeded with a so-called "residual doubt theory" because Coleman instructed him to do so. Residual doubt has been described as a theory that creates "a lingering uncertainty about facts, a state of mind that exists

## II.

Because Coleman's *habeas* petition was filed on January 6, 1995, before the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), became effective on April 24, 1996, the pre-AEDPA standard of review applies. *See* 28 U.S.C. § 2254 (1996). This court must review the district court's legal conclusions *de novo* and its findings of fact for clear error. *Rickman v. Bell*, 131 F.3d 1150, 1153 (6th Cir. 1997). And we must defer to state court factual findings pertaining to primary or historical facts, which are presumed correct and are rebuttable only by clear and convincing evidence. *See id.* State court determinations of law and mixed questions of law and fact should be reviewed *de novo*. *Id.*

## III.

The district court concluded that Coleman had procedurally defaulted on 34 of the 50 claims raised in his *habeas* petition because of failure to comply with Ohio's *res judicata* doctrine established in *State v. Perry*, 226 N.E.2d 104 (Ohio 1967). In *Perry*, the Ohio Supreme Court held:

Under the doctrine of *res judicata*, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, *except an appeal from that judgment*, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.

*Id.* at 108 (emphasis added).

Coleman contends that even if his claims are procedurally defaulted for not having been raised on direct appeal, his default is "excused" because his appellate counsel was constitutionally ineffective for failing to properly raise the issues in that appeal. Coleman cannot obtain federal *habeas* relief under 28 U.S.C. § 2254 unless he has completely exhausted his available state court remedies by presenting his

claims to the state's highest court. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991). And, he cannot circumvent the exhaustion requirement by failing to comply with state procedural rules. *See id.* at 731-32; *Combs v. Coyle*, 205 F.3d 269, 274 (6th Cir.), *cert. denied*, 121 S. Ct. 623 (2000).

When determining whether a state petitioner's claim is barred from *habeas* review based on procedural default, this court must look to the following four factors. First, the court must determine that there is an applicable state procedural rule with which the petitioner failed to comply. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Second, the court must determine that the state rule is one that is "firmly established and regularly followed." *Jones v. Toombs*, 125 F.3d 945, 946 (6th Cir. 1997) (internal quotation marks and citation omitted). Third, the court must determine that the state procedural rule is an "adequate and independent" state ground on which the state may rely to foreclose review of the federal constitutional claim. *Maupin*, 785 F.2d at 138. If all three of these factors are met, the petitioner must then show there was "cause" for the default and "prejudice" resulting therefrom, or that a "miscarriage of justice" would result if the procedural default were enforced. *See Wainwright v. Sykes*, 433 U.S. 72, 84-87, 90-91 (1977). A state procedural bar will be held to bar federal *habeas* review only when the last reasoned decision of the state court concluded that the claims were barred by a state procedural rule. *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).

In *Edwards v. Carpenter*, 529 U.S. 446, 120 S. Ct. 1587 (2000), the United States Supreme Court held that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Id.* at 1592. In this case, the petitioner has procedurally defaulted on his claim that his appellate counsel was ineffective because, as we will explain, he failed to bring the claim in a timely manner as required by Ohio law, which is itself a procedural bar. Therefore, in order

The district court rejected each of Coleman's claims. We agree that the claims relating to Ohio's capital punishment scheme are either procedurally defaulted or are lacking in merit, substantially for the reasons given in the district court opinion.

## VII.

Coleman also contends that he was denied the effective assistance of counsel during sentencing as guaranteed by the Sixth Amendment because his attorneys had a duty to investigate all possible mitigating factors, including those relating to Coleman's mental health background, and counsel breached this duty by failing to conduct a complete, independent investigation. We are not entirely convinced that Coleman properly raised this claim on direct appeal; indeed, we are inclined to think the claim was procedurally defaulted. However, the respondent stipulated that Coleman "may be deemed to have fairly presented [this] issue in state court," so we will address the merits of the claim.

Specifically, Coleman alleges four errors committed by his counsel at sentencing: (1) failure to demand a hearing and determination concerning both his competency to waive presentation of mitigation evidence and his refusal to cooperate with trial counsel in providing information for an appropriate investigation of mitigating factors; (2) failure to obtain the necessary reports and evaluations from the appropriate experts for use as evidence at the mitigation phase of the proceedings; (3) failure to raise the issue of the constitutional impropriety of Coleman effectively waiving the presentation of mitigation evidence at the sentencing phase of the proceedings; and (4) failure to request the appointment of an investigator, mitigation specialist, and/or psychologist to assist in the investigation, preparation, and presentation of mitigating evidence.

To repeat, the *Strickland* Court articulated the following test for determining the effectiveness of counsel:

that he would handcuff his victims and the majority of his assaults on their persons would occur after they were bound and defenseless.  It should be noted that all of the victims of other crimes by the defendant who testified in this trial were elderly people, many of them frail, and most all of them incapable of defending themselves against the defendant's attack and most certainly when they were at the disadvantage of having their hands bound with handcuffs, electrical cord or similar ligatures.

We agree with the trial court that the "other acts" evidence was relevant because it showed that the methodology the killer used in Mrs. Walters's death closely resembled that used in other crimes committed by Coleman and thus tended to show that Coleman was Mrs. Walters's killer. Accordingly, the admission of the evidence was not fundamentally unfair and did not violate Coleman's due process rights.

### V.

Coleman alleges that the district court erred in denying him an evidentiary hearing to reexamine the factual issues resolved by the state courts because he was never afforded the opportunity to develop and litigate the factual bases for his federal constitutional claims.  In a *habeas* proceeding, state court findings of fact enjoy a presumption of correctness. *See Rickman*, 131 F.3d at 1153.  In order for Coleman to prevail on this claim, he must rebut this presumption of correctness with clear and convincing evidence. *See id.*  The record reveals that Coleman was given the opportunity to fully and fairly litigate his claims in the Ohio courts and failed to do so. Because Coleman has done nothing to rebut the presumption of correctness given to the factual issues resolved by the state court, his due process rights have not been violated by the denial of an evidentiary hearing in the federal *habeas* court.

### VI.

Coleman raises a number of challenges to Ohio's capital punishment scheme both on its face and as applied to his case.

for Coleman to use his ineffective assistance of appellate counsel claim as "cause" to excuse his other procedurally defaulted claims, he must first meet the cause and prejudice standard for the ineffective assistance of appellate counsel claim itself.  We conclude that Coleman has not carried this burden.

According to Coleman, the district court erred in declining to consider his ineffective assistance of appellate counsel claim on the ground that the claim was procedurally barred. As we have said, the Ohio Court of Appeals denied Coleman's effort to have his ineffective assistance of appellate counsel claim considered in his application for delayed reconsideration of his direct appeal.  The Court of Appeals ruled that the application was untimely because it was not filed within 90 days of the original Court of Appeals decision, as required by Ohio App. R. 26(B).  Coleman alleges that he asserted the claim in his petition for post-conviction relief in the state trial court in 1990, rather than in an application to reconsider his direct appeal, because there was no regularly followed procedure in the Ohio courts for raising such claims.

In February 1992, after conclusion of his direct appeals to the Ohio Court of Appeals and Ohio Supreme Court, and during the pendency of Coleman's appeal of the denial of his post-conviction petition, the Ohio Supreme Court decided *State v. Murnahan*, 584 N.E.2d 1204 (Ohio 1992).  The *Murnahan* court held that ineffective assistance of appellate counsel claims should be raised in a delayed motion for reconsideration before the Ohio Court of Appeals and not in a petition for post-conviction relief.

Coleman waited 16 months after *Murnahan* was decided before filing his delayed motion for reconsideration in the Court of Appeals on July 9, 1993, and the Court of Appeals dismissed the application because it was more than 90 days after the court's 1986 decision and Coleman had not shown good cause for the delay, as required by Ohio App. R. 26(B).

On July 1, 1993, Ohio App. R. 26(B) was amended to provide, in pertinent part:

(B)  Application for reopening

(1)  A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel.  An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

(2)  An application for reopening shall contain all of the following:

. . . .

(b)  A showing of good cause for untimely filing if the application is filed more than ninety days after journalization of the appellate judgment.

Ohio App. R. 26(B).

While Coleman's application was filed prior to the amendment's effective date, the amendment governs further proceedings in pending actions, unless it is shown that its application would work an injustice.  Coleman has not made this showing.

Coleman argues that the 90-day filing period that he missed should have been "tolled" due to the fact that the Ohio Court of Appeals had not yet ruled on his petition for post-conviction relief, which included a claim of ineffective assistance of appellate counsel.  Although he is not entirely clear about it, Coleman seems to be arguing there was not a firmly established and regularly followed procedural rule for raising ineffective assistance of appellate counsel claims in 1986 when his appeal was decided in the Ohio Court of Appeals, and therefore, no "adequate and independent" state

Coleman contends that the "other acts" evidence introduced at trial linking him to other murder cases violated his right to due process and a fair trial because the evidence was dissimilar to the crime involving Mrs. Walters and irrelevant to the issues of scheme, motive, intent, system, or absence of mistake or accident.

The respondent answers that the "other acts" evidence was admissible because of its similarity to the case involving Mrs. Walters since it shows that Coleman was involved in other cases involving:  (1) elderly couples; (2) use of deception to enter the victim's home; (3) use of handcuffs; (4) use of electrical cords to tie the victim's hands and feet; (5) the incapacitation of the victim's telephone; (6) the theft of the victim's motor vehicle; and (7) a conspiracy with Debra Brown.  Although the respondent's argument is not entirely clear, we take it to be that the "other acts" evidence was introduced to show that Mrs. Walters's killer used the same *modus operandi* that Coleman used in the other killings—his "signature," so to speak—and therefore, that the "other acts" evidence was admissible as tending to prove Coleman's identity as the killer in this case.  This is, of course, a familiar justification for the introduction of "other acts" evidence pursuant to Ohio Rev. Code Ann. § 2945.59 and Ohio Evid. R. 404(B).

Because this is an appeal from a *habeas corpus* decision and not an appeal of Coleman's state conviction, we do not pass upon "errors in the application of state law, especially rulings regarding the admission or exclusion of evidence." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1998).  A state court evidentiary ruling will be reviewed by a federal *habeas* court only if it were so fundamentally unfair as to violate the petitioner's due process rights.  *See Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

The trial court's explanation for the admission of the "other acts" evidence included:

In many of these other offenses, the evidence showed that the defendant used the same method of operation;

they had been supplied to him, the verdict would have been the same because the quantity and quality of the evidence introduced to prove Coleman's guilt was overwhelming. Consequently, Coleman is unable to show that he was "prejudiced" by not having the information, and there is no *Brady* violation.

**B.**

Coleman also claims that he was denied due process of law because the state introduced evidence of "other acts," including murder, for which he was not on trial.

"Other acts" evidence may be introduced in certain situations pursuant to Ohio Rev. Code Ann. § 2945.59 and Ohio Evid. R. 404(B). Section 2945.59 provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

Ohio Rev. Code Ann. § 2945.59.

And, Ohio Evid. R. 404(B) specifies:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ohio Evid. R. 404(B).

ground existed to foreclose review of the federal constitutional claim. We do not find Coleman's argument persuasive.

Before the Ohio Supreme Court's decision in *Murnahan*, it was well established in the Ohio First Appellate District, the appellate district in which Coleman's appeal was heard, that claims of ineffective assistance of appellate counsel were to be raised in a delayed motion for reconsideration and were not cognizable in state post-conviction proceedings. *See State v. Rone*, Nos. C-820322, B-784088, 1983 WL 8877 (Ohio Ct. App. June 1, 1983) (unpublished disposition). Even assuming Coleman was confused by the proper forum in which to initially bring his claim, he does not explain why he did not ask the court to remove his ineffective appellate counsel claim from his post-conviction petition without prejudice in order to raise it in a timely manner in a *Murnahan* motion or why he waited 16 months after *Murnahan* was decided to raise the claim.

When a *habeas* petitioner has failed to show cause for not asserting his ineffective assistance of appellate counsel claim properly in the Ohio courts, a federal court may not reach the merits of the *habeas* claim unless the petitioner can show that refusal to consider his claim would result in a fundamental miscarriage of justice. The fundamental miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). Coleman has not made this showing and does not claim to have done so.

Even if Coleman could offer an appropriate excuse for failing to bring his ineffective assistance of appellate counsel claim in a proper and timely manner, the claim is meritless. The *Edwards* Court recently reemphasized that "[n]ot just any deficiency in counsel's performance" is sufficient to excuse procedural default; "the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards*, 120 S. Ct. at 1591. The proper ineffective assistance of

counsel standard was articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

On direct appeal to the Ohio First Appellate District, Coleman's appellate counsel raised 15 assignments of error and on direct appeal to the Ohio Supreme Court, he asserted 11 assignments of error. After a careful review of the record, we are in agreement with the district court that Coleman's appellate counsel was not deficient for refusing to raise approximately 60 additional claims as Coleman suggests. Coleman does not have a constitutional right to have his counsel press nonfrivolous points if counsel decides as a matter of professional judgment not to press those points. *See Jones v. Barnes*, 463 U.S. 745, 750-51 (1983).

In conclusion, because Coleman's ineffective assistance of appellate counsel claim is itself procedurally defaulted and he has not shown "cause and prejudice" for that default, Coleman's ineffective assistance claim cannot serve as "cause" to excuse his 34 procedurally defaulted claims.

## IV.

Coleman next claims that his due process rights were violated due to misconduct by the prosecutor.

### A.

Specifically, Coleman argues that the prosecution failed to disclose the existence of the following: (1) an interview conducted by the Federal Bureau of Investigation (FBI) on July 20, 1984; (2) items seized by the FBI from Coleman's grandmother's home; (3) the identity of Linnroy Bottoson, who allegedly knew of Coleman's whereabouts; (4) Coleman's alleged efforts to surrender; (5) the prosecution's intention to persuade Debra Brown to cooperate with them; (6) any exculpatory evidence concerning or relating to Coleman; (7) psychological, psychiatric, and/or medical profiles, reports, evaluations, and summaries concerning Coleman and/or Brown; (8) background files, reports, information, and summaries concerning Coleman and/or members of his family; (9) background information regarding Coleman; and (10) any mitigating evidence concerning Coleman. We agree with the district court that Coleman procedurally defaulted on any claim related to the seventh item because he failed to raise it on direct appeal, and the state court did not consider it when ruling on Coleman's post-conviction petition.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). Furthermore, there is no *Brady* violation if the defendant knew or should have known the essential facts necessary to obtain the information in question. *See Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998), *cert. denied*, 528 U.S. 842 (1999).

Without deciding that the items described by Coleman were withheld from him as he alleges, we are satisfied that even if