Leon WHEELER, Petitioner–
Appellant,

v.

Kurt JONES, Warden, Carson
City Correctional Facility,
Respondent–Appellee.

No. 00–2319.

United States Court of Appeals,
Sixth Circuit.

Jan. 13, 2003.

24

Before BOGGS and COLE, Circuit Judges; and BELL, Chief District Judge.*

PER CURIAM.

In this appeal, petitioner Leon Wheeler seeks a writ of habeas corpus under 28 U.S.C. § 2254. In 1992, a jury convicted petitioner of second degree murder and of possession of a firearm during the commission of a felony. After his motion for relief from the judgment was denied by the Michigan courts, petitioner brought this petition for a writ of habeas corpus. While denying the petition on all grounds, the district court issued a certificate of appealability on three grounds. Having considered petitioner's arguments on these three grounds, the district court's decision denying the writ of habeas corpus is AFFIRMED for the following reasons.

## I.

In 1992, petitioner was convicted of the murder of Sonya Davis ("Sonya"). At petitioner's trial, Sonya's twin sister, Tanya Davis ("Tanya"), was the prosecution's main witness. In her testimony, Tanya indicated that she had known petitioner for approximately ten years, that petitioner's nickname was "Jun," and that she did not like petitioner. While petitioner and Sonya had been dating, Sonya told Tanya on December 6, 1991, that Sonya had broken up with petitioner. The trial court admitted Sonya's statement that she and petitioner had broken up only for the non-hearsay purpose of showing why Tanya thought that Sonya and petitioner had broken up. Additionally, to make this limited purpose clear to the jury, the trial court instructed: "I will let it in for this reason just to show why [Tanya] though [Sonya and petitioner] had broken up but it is not

* The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

evidence. You may not consider it as evidence that [Sonya] and [petitioner] had broken up. Do you understand that? Only why [Tanya] thought they had."

On the afternoon of December 6, 1991, petitioner visited the sisters' apartment in Detroit. Tanya saw Sonya and petitioner come out of a bedroom in the apartment and noticed that Sonya seemed nervous. Later that evening around 10 o'clock, Sonya answered the phone in the apartment. After hanging up the phone, Sonya told Tanya "That was Jun. He's on his way over."

About 20 minutes later, Tanya heard a car horn honk outside and identified the car horn honk with petitioner, as she had heard this honk every night petitioner picked up Sonya. Additionally, Sonya said "that's Jun" and went downstairs. About two minutes later, Tanya heard a loud noise from outside. When she looked out the window, Tanya saw Sonya lying on the floor. She also observed petitioner limping away. As he limped away, Tanya noticed that petitioner placed an object in his pocket. Although it was dark outside, Tanya indicated that she was only 20 or 25 feet from petitioner, that the building lighted the area, and that her view was unobstructed. Furthermore, she emphasized that having known petitioner for 10 years, she was able to identify him by his car and his limp.

On cross-examination, petitioner's counsel impeached Tanya's testimony by showing that in an earlier statement, Tanya had identified petitioner's car as a Cadillac. At trial, Tanya acknowledged that petitioner's car was a Buick Riviera. Tanya was also impeached concerning the lighting conditions. Originally, she indicated that it was just dark outside, but at trial, she stated that there was light coming from the apartment building. Petitioner also admitted on cross-examination that she could

not tell whether the person was a man or a woman. Nonetheless, Tanya identified petitioner as the person that she saw outside.

After petitioner's counsel concluded cross-examination, a juror submitted a question to the judge to ask Tanya. Based on this submission, the judge asked Tanya whether she had seen petitioner and Sonya fighting. Tanya answered the initial question and a series of follow up questions about fights between petitioner and Sonya. Petitioner's counsel again cross-examined Tanya. Through all of this questioning, Tanya indicated that she had seen some fights between petitioner and Sonya, that recently, she had just seen marks on Sonya and rips in Sonya's clothes but not the actual fighting, and that during the summer, petitioner had broken down Sonya's door.

For his defense, petitioner argued that he did not murder Sonya and that he was at a friend's house drinking beer and talking all night. To support this defense, petitioner presented the testimony of his friend Russell Perkins ("Mr.Perkins") and testified in his own defense. Mr. Perkins testified that petitioner arrived at his home in Inkster around 9 o'clock and that petitioner and Mr. Perkins were drinking beer and talking until they went to bed around midnight. Consistent with Mr. Perkins' testimony, petitioner testified that on December 6, 1991, he arrived at Mr. perkins' home in Inkster around 9 o'clock in the evening and that he stayed overnight at Mr. Perkins' home. Additionally, petitioner stated that Sonya was his girlfriend, that he and Sonya got along well, and that he and Sonya did not physically fight. Petitioner also told the jury that he did not limp, and petitioner showed the jury how he walked to demonstrate that he did not limp. Finally, petitioner denied shooting Sonya. After deliberating, the

jury convicted petitioner of second degree murder.

Although petitioner never filed a direct appeal with the Michigan courts, he filed a motion for relief from judgment. This motion was denied by the Detroit Recorder's Court on December 4, 1996, and the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner leave to appeal the denial of the motion. On November 17, 1998, petitioner filed this petition for a writ of habeas corpus and asserted six grounds for relief. The district court denied petitioner's motion but granted a certificate of appealability on three of the six grounds. These three grounds are: (1) whether petitioner's constitutional right to confront the witnesses against him was violated by the admission of Sonya's hearsay statements to Tanya; (2) whether petitioner's constitutional rights to due process and an impartial jury were violated by the testimony concerning petitioner's prior bad acts elicited by the trial judge in response to questions proposed by a juror; (3) whether petitioner's constitutional rights to due process and a fair trial were violated by the admission of a photograph depicting a large amount of blood on the floor of the stairway where Sonya was shot.

## II.

Although this court reviews the district court's legal conclusions *de novo* and its factual findings for clear error, *Scott v. Elo,* 302 F.3d 598, 602 (6th Cir.2002), this court reviews the state court proceedings consistent with its authority under 28 U.S.C. § 2254. An individual in state custody may only apply for a federal writ of habeas corpus on the basis that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also* 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus

shall not extend to a prisoner unless... (3) He is in custody in violation of the Constitution or laws or treaties of the United States.").

In 1996, Congress amended § 2254 in the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104–132, 110 STAT. 1214 ("AEDPA"). The AEDPA applies to all habeas petitions filed after April 24, 1996. *See Penry v. Johnson,* 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Miller v. Francis,* 269 F.3d 609, 613 (6th Cir.2001), *cert. denied,* 535 U.S. 1011, 122 S.Ct. 1592, 152 L.Ed.2d 509 (2002). The AEDPA standards apply to this 1998 petition.

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the AEDPA, the source of law for a federal court reviewing a petition for a writ of habeas corpus is limited to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the federal courts from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clear-

ly established federal law. *Harris v. Stovall,* 212 F.3d 940, 943–44 (6th Cir.2000), *cert. denied,* 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001); *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir.1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

> The AEDPA requires [this court] to review the [state] court's decision based on clearly established Supreme Court precedent at the time [the petitioner's] conviction became final. [This court is] not permitted to rely on Supreme Court cases decided after the court's decision, nor [is the court] permitted to rely on *any* decision by any court other than the Supreme Court in evaluating the [state] court's decision.

*Williams v. Coyle,* 260 F.3d 684, 703 (6th Cir.2001). Subsequent Supreme Court decisions and references to federal circuit court decisions are "largely irrelevant." *Id.* at 703; *see Bailey v. Mitchell,* 271 F.3d 652, 655 (6th Cir.2001).

Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a cases differently than this Court has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 412–13; *see Penry,* 532 U.S. at 792. A state-court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's

case." 529 U.S. at 413; *see Penry,* 532 U.S. at 792. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." 529 U.S. at 411. Rather, the application must also be "unreasonable." *Id.; see also Miller v. Francis,* 258 F.3d at 614; *Magana v. Hofbauer,* 263 F.3d 542, 546 (6th Cir.2001). Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. 529 U.S. at 410 (disavowing *Drinkard v. Johnson,* 97 F.3d 751, 769 (5th Cir.1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." 529 U.S. at 409; *Miller v. Francis,* 269 F.3d at 614. The Supreme Court's recent *Penry* decision summarized the "unreasonable application" inquiry as follows:

> A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

532 U.S. at 793 (citations omitted); *see Williams v. Coyle,* 260 F.3d at 699.

■ Accordingly, the focus in determining whether to grant a writ of habeas corpus is the reasonableness of the state court's resolution of federal issues. In this case, it is not possible to focus on the state

court's resolution of federal issues because the record on appeal does not indicate what issues were presented to the state courts. As a result, this petition must be reviewed as if the state court did not explain the reasons for its decision. "Where the state court has failed to articulate its reasoning for its decision, 'federal courts are obligated to conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented.'" *Palazzolo v. Gorcyca*, 244 F.3d 512, 516 (6th Cir.), *cert. denied*, 534 U.S. 828, 122 S.Ct. 68, 151 L.Ed.2d 35 (2001) (quoting *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir.2000), *cert. denied*, 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001)). "'That independent review, however, is not a full, *de novo*, review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.'" *Onifer v. Tyszkiewicz*, 255 F.3d 313, 316 (6th Cir.) (quoting *Harris v. Stovall*, 212 F.3d at 943), *cert. denied*, 534 U.S. 930, 122 S.Ct. 292, 151 L.Ed.2d 216 (2001).

## III.

### A. Hearsay Evidence

■ The district court granted a certificate of appealability on whether petitioner was denied his right to confront witnesses against him. Specifically, the trial court permitted Tanya to testify that Sonya told Tanya that Sonya and petitioner had broken up, that after hanging up the phone, Sonya said: "That was Jun. He's on his way over," and that before leaving the apartment, Sonya said: "That's Jun." In his brief, petitioner contends that the trial court erred in admitting these statements because the statements are inadmissible under Michigan's present sense impression exception to the hearsay rule. Petitioner's argument that the trial court erroneously applied Michigan law is not cognizable on federal habeas review. Federal courts may not grant a writ of habeas corpus based on an error in state law. *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) ("Respondent can obtain federal habeas corpus relief only if his custody is in violation of the Federal Constitution.").

Petitioner also argues that the admission of the statements deprived him of his Sixth Amendment right to confront witnesses against him. U.S. CONST. amend. VI. "The nonhearsay aspect of [an out of court statement] . . . raises no Confrontation Clause concerns." *Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985); *see also United States v. Martin*, 897 F.2d 1368, 1372 (6th Cir. 1990) ("The assertions in this case were not offered for their content; therefore, there was no need to test the credibility of the out of court declarant as to their substance."). In *Idaho v. Wright*, 497 U.S. 805, 814–15, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the Supreme Court explained that a hearsay statement does not violate the Confrontation Clause, if the declarant is unavailable and "if [the statement] bears adequate 'indicia of reliability.'" *Wright*, 497 U.S. at 814–15 (internal quotation omitted). To demonstrate reliability, the prosecution may show either that the hearsay statement "falls within a firmly rooted hearsay exception" or that the hearsay statement has "particularized guarantees of trustworthiness." *Id.* at 815. "The 'particularized guarantees' are determined based upon the totality of circumstances, restricted to those that surround the making of the statement and render the declarant particularly worthy of belief." *An-*

*thony v. DeWitt,* 295 F.3d 554, 562 (6th Cir.2002).

■ Applying this standard to Sonya's statements, petitioner's Sixth Amendment Confrontation Clause rights were not violated. Sonya's statement that she and petitioner had broken up was offered for a nonhearsay purpose, and the jury was specifically instructed only to consider this statement for the nonhearsay purpose. Hence, admission of this statement did not violate petitioner's rights under the Sixth Amendment's Confrontation Clause.

■ Although Sonya's other statements, "That was Jun. He's on his way over" and "That's Jun," were hearsay, their admission did not violate petitioner's Confrontation Clause rights. Sonya, the declarant, was an unavailable witness as she had died, and the statements bear adequate indicia of reliability. In this case, Sonya's statements had adequate indicia of reliability because there were particularized guarantees of trustworthiness associated with the statements. Sonya personally experienced the events, and her statements were based on her personal knowledge. The statements also were made immediately after Sonya's perception of the events. Because the statements were close in time to Sonya experiencing the events, she would not have had difficulty recalling the events. Finally, nothing about the statements suggests that Sonya was lying. Consequently, Petitioner's Sixth Amendment Confrontation Clause rights were not violated by the admission of these statements.

■ Even assuming that petitioner's Sixth Amendment Confrontation Clause rights were violated, petitioner is not entitled to a writ of habeas corpus unless the alleged error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *see also Ford v. Curtis,* 277 F.3d 806, 810–11 (6th Cir.2002) (applying *Brecht v. Abrahamson* to an alleged Confrontation Clause violation in the context of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254). Having reviewed the record, Sonya's statements did not have a "substantial and injurious effect." Petitioner's conviction was based on the eyewitness testimony of Tanya. After she heard the shot, Tanya saw petitioner limping away from where Sonya was shot. Hence, even if petitioner's Sixth Amendment rights were violated, he is not entitled to a writ of habeas corpus.

**B. Evidence of Prior Bad Acts and Juror's Question**

The district court also issued a certificate of appealability as to whether petitioner's rights to due process and a fair trial were violated by the trial judge's eliciting testimony about petitioner's prior bad acts in response to a juror's question. Based on this issue, petitioner presents two separate arguments. First, petitioner contends that the testimony concerning his prior bad acts was inadmissible under Michigan's evidentiary rules. Second, he claims that his Sixth Amendment right to an impartial jury and his Fourteenth Amendment right to due process were violated by the juror's question and by the trial judge's follow-up questions.

■ Petitioner's first argument is without merit because petitioner's allegation that Michigan courts erred in their application of Michigan law does not entitle petitioner to a writ of habeas corpus. *Mabry v. Johnson,* 467 U.S. 504, 507, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). Even assuming that petitioner is contending that the admission of his prior bad acts violated the Fourteenth Amendment's Due Process Clause, he is still not entitled to

relief. "[O]nly in extraordinary cases will an error in the application of state rules of evidence rise to the level of a due process violation in a federal habeas proceeding." *Schoenberger v. Russell,* 290 F.3d 831, 836 (6th Cir.2002); *Coleman v. Mitchell,* 244 F.3d 533, 542 (6th Cir.2001) ("A state court ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights."). This case is not an extraordinary case, and the admission of testimony concerning petitioner's prior bad acts was not fundamentally unfair. Hence, petitioner's Fourteenth Amendment Due Process Clause rights were not violated.

■ Similarly, petitioner's second argument is without merit. Although federal courts discourage questions by jurors in federal criminal trials, *see, e.g., United States v. Collins,* 226 F.3d 457, 461 (6th Cir.2000), petitioner has cited no cases indicating that questions by jurors implicate a specific constitutional guarantee. Accordingly, the juror's question and the trial court's follow up questions are reviewed for a violation of due process. The trial court's decision to ask these questions did not result in petitioner receiving a fundamentally unfair trial. Thus, petitioner is not entitled to a writ of habeas corpus based on the admission of evidence of his prior bad acts or on the judge's decision to ask a juror's question and to follow up the juror's question with additional questions.

C. Photographic Evidence

■ Finally, a certificate of appealability was issued as to whether petitioner's constitutional rights to due process and a fair trial were violated by the admission of a photograph depicting a large amount of blood on the floor of the stairway where Sonya was shot. The trial court admitted the photograph despite petitioner's objection that the photograph was not relevant

and was prejudicial because the trial court found that the photograph was "probative and it show[ed] better than anything else of where the body pictorially was found." Habeas relief is unavailable for alleged errors in state law evidentiary rulings. In fact, a federal court considering a petition for writ of habeas corpus does not consider state law errors. The question on habeas corpus review is whether the state court's ruling was "so fundamentally unfair as to violate the petitioner's due process rights." *Coleman v. Mitchell,* 244 F.3d 533, 542 (6th Cir.2001). In this case, the admission of the photograph was not fundamentally unfair and did not violate petitioner's due process rights.

IV.

As explained, the district court's decision denying the writ of habeas corpus is AFFIRMED.