MARTHA CRAIG DAUGHTREY, Circuit Judge.
Petitioner Nigel Wright was tried and convicted of aiding and abetting in the murder of Travis Goodwin and sentenced to life imprisonment. The evidence against Wright included the identification testimony of eyewitness Dawayne Currie and the testimony of Officer Thomas about statements Goodwin made before his death, indicating his fear of Wright. In his petition for a writ of habeas corpus, Wright claimed that the admission of Goodwin’s statements violated his Sixth Amendment right to confrontation and that his trial counsel was ineffective for failing to object on this basis. The key issue in assessing the merits of both claims is whether admission of Goodwin’s statements affected the outcome of the trial by bolstering Cur-rie’s credibility. The state appellate court said no, but the district court said yes. The respondent appeals the district court’s grant of the writ. We reverse because we do not find the state court’s decision to be contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence.
FACTUAL AND PROCEDURAL BACKGROUND
Early in the morning on December. 29, 2007, Travis Goodwin was shot while sitting in a van parked outside of his mother’s house. He died 12 days later from his wounds. Wright was charged with aiding and abetting the shooters, two men known as Worm and Black, by driving them to and from the shooting.
The primary witness for the prosecution was Dawayne Currie, who lived near the scene of the shooting. At trial, Currie testified to the following: He was playing video games with his six-year-old daughter around 2:00 AM when he saw Goodwin pull up and park the van in a driveway. About 20 minutes later, Currie heard gunshots and took his daughter to the back of the house before returning to look out the front window. He saw Black backing away from the van and firing a round with an AK47 assault rifle, Worm getting into the passenger side of Wright’s black Charger holding a shiny handgun, and Wright sitting in the driver’s seat. Black and Worm were wearing ski masks but he knew them from their manner of walking and distinctive body shapes. Even though it was dark and the car’s windows were lightly tinted, Currie could see Wright’s face and his braided hairstyle. Currie’s testimony that the shooters used a handgun and an AK47 assault rifle was consistent with the type of shell casings found at the scene. Currie also acknowledged that, a few weeks prior to Goodwin’s murder, Wright had paid him $100 to burn a drug house in the neighborhood that belonged to Worm. Currie did so knowing that Wright was going to blame Goodwin. Currie testified that Goodwin was involved in the drug business and had *405 conflicts with Wright, Black, and Worm because of it.
Currie’s testimony contained some inconsistencies. Although he testified that he told Goodwin’s mother, Alice Smiley, who shot her son before Goodwin’s funeral, Smiley testified that Currie never told her who killed her son. Currie testified that he saw Wright’s face the night of the shooting, but he told defense counsel before trial that he never saw Wright’s face. Cur-rie also admitted at trial that he had lied under oath at the preliminary examination regarding his knowledge of any conflict between Wright and Goodwin. Despite the inconsistencies in his testimony, Currie was consistent in his identifications of the perpetrators. On redirect, Currie testified adamantly that Wright was the person who asked him to burn the drug house, blamed Goodwin for it, and drove the black Charger to and from the shooting.
Other than Currie’s testimony, another component of the prosecutor’s case-in-chief was recordings of phone calls Wright made from jail. The prosecutor argued that Wright admitted involvement in the murder when he made statements such as “even if I didn’t do it,” “he was out there the night when Trav got shot.... I remember,” and “they know I didn’t do no shooting.” Wright also told his girlfriend of his decision to take out his braids and change his hairstyle. In the recordings, Wright alluded to giving Currie and his father something for not going to court or for going to court and telling the truth. Currie testified that Wright offered him money not to come to court.
A third component of the prosecutor’s case, and the one that gave rise to Wright’s habeas claims at issue in this appeal, was the testimony of Officer Thomas. He testified that, less than one month before his death, Goodwin flagged him down while he was on patrol and told him that Goodwin had received threats from Wright, Damien Bell, and Tommy Dickey, who were expanding their drug-sales territory. Defense counsel objected to the testimony as extremely prejudicial and biased, but the trial court held that the testimony did not' present a hearsay problem and could be admitted. Defense counsel impeached Officer Thomas by eliciting that he did not put Goodwin’s concerns in a police report or seek out the individuals making the threats and that he was close to Goodwin’s family. The prosecutor’s closing argument referenced Officer Thomas’s testimony. She stated, “Travis Goodwin reached out to a police officer and said trouble brewing; I’m worried about—I’m worried about somebody’s going to hurt me,” and “he named three people first of which was Nigel Wright.”
The jury returned a guilty verdict, and Wright appealed. He argued that the trial court erred in admitting Goodwin’s out-of-court statements through Officer Thomas. People v. Wright, No. 288975, 2010 WL 5373811, at *1 (Mich. Ct. App. Dec. 28, 2010). The appellate court concluded that the statements were inadmissible hearsay but declined to reverse “because it does not appear more probable than not that the error affected the outcome of the trial.” Id. at *3. The court carefully reviewed the record and concluded, “[W]e do not agree [with Wright] that the inconsistencies in Currie’s testimony were so consequential, or the inadmissible evidence so prejudicial, that one must conclude that more likely than hot the jury’s assessment of defendant’s guilt or innocence turned on the inadmissible evidence.” Id. With regard to Wright’s Confrontation Clause claim, the court stated:
[D]efense counsel objected to the admission of Officer Thomas’s testimony about Goodwin’s statements, but not on Confrontation Clause grounds. Accordingly, *406 this issue is unpreserved. We review unpreserved constitutional error for plain error affecting substantial rights. A demonstration of plain error affecting substantial rights generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. For the reasons already noted, defendant has not established that the admission of these statements affected the outcome of his case.
Id, at *4 (internal quotation marks and citations omitted).
The Michigan Supreme Court declined review, and Wright filed the instant habeas petition in federal court. The district court conditionally granted the writ, finding that the Michigan court unreasonably applied clearly established federal law in concluding that Wright was not denied effective assistance of counsel when his attorney failed to object on Confrontation Clause grounds to Officer Thomas’s testimony. Wright v. Rivard, No. 2:12-CV-14164, 2015 WL 3441154, at *1 (E.D. Mich. May 28, 2015). The district court further found that ineffective assistance of counsel excused Wright’s procedural default of his Confrontation Clause claim, and that the Confrontation Clause violation was not harmless error. Id. The respondent appealed.
DISCUSSION
In a habeas proceeding, we ordinarily review the district court’s legal conclusions de novo and its findings of fact for clear error, Davis v. Lafler, 658 F.3d 525, 530 (6th Cir. 2011) (en banc). However, “when the district court’s decision in a habeas case is based on a transcript from the petitioner’s state court trial, and the district court thus makes no credibility determination or other apparent finding of fact, the district court’s factual findings are reviewed de novo.” Wolfe v. Brigano, 232 F.3d 499, 501 (6th Cir. 2000) (internal quotation marks omitted).
Under the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), an application for a writ of habeas corpus may not be granted unless the state court adjudication of the merits of the claim “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” or “resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d). Section 2254(d)’s “highly deferential standard ... demands that state-court decisions be given the benefit of the doubt.” Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (internal quotation marks and citations omitted).
A state court’s decision is contrary to clearly established federal law “if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.” Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court unreasonably applies clearly established law if it identifies the correct legal principle but unreasonably applies it to the facts of the case. Id. “For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.” Harrington v. Richter, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (internal quotation marks and citation omitted). Once a state court has determined that a claim lacks merit, a federal court is precluded from reaching a contrary conclusion as long as “fairminded *407 jurists could disagree on the correctness of the state court’s decision.” Id. (internal quotation marks omitted). Similarly, “a state-court factual determination is not unreasonable merely because the federal ha-beas court would have reached a different conclusion in the first instance.” Wood v. Allen, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010).
Ineffective Assistance of Counsel Claim
Wright argues that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment when his attorney failed to object to Officer Thomas’s testimony as a violation of the Confrontation Clause. “An ineffective assistance claim has two components: A petitioner must show that counsel’s performance was deficient, and that the deficiency prejudiced the defense.” Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
On direct appeal, the state court applied Strickland and held that, “[e]ven if defendant could overcome the presumption of effective assistance, he has not established that any deficiency was prejudicial.” People v. Wright, 2010 WL 5373811, at *5. The state court reasoned that admission of Goodwin’s hearsay statements to Officer Thomas was not outcome determinative, “[i]n light of the other evidence connecting defendant with the murder.” Id. at *4. In its analysis, the state court emphasized that, despite some inconsistencies in his testimony, Currie’s identification of the suspects never wavered once he identified them. Id. at *3. Also, Currie’s testimony was consistent with the expert witness’s testimony about the type and number of firearms at the scene. Id. Further, even if Goodwin’s statements had not come in through Officer .Thomas, the jury still would have heard Currie testify that he burned the drug house knowing Goodwin would be blamed. Id.
In assessing Wright’s ineffective-assistance claim on habeas review, the district court first reviewed de novo whether trial counsel was deficient because “the state court did not decide the question.” Wright v. Rivard, 2015 WL 3441154, at *6. The court determined that because Goodwin’s statements to Officer Thomas were testimonial, an objection under the Confrontation Clause would have been sustained and that counsel’s failure to object was “outside the wide range of professionally competent assistance.” Id. at *8. The court then reviewed under the deferential AED-PA standard the Michigan court’s holding that Wright was not prejudiced, and found it to be unreasonable because “[t]he evidence implicating Wright was far from overwhelming and rested almost exclusively on the testimony of Currie [who] ... suffered from numerous credibility problems.” Id. at *9. The court concluded that “[h]ad jurors not heard Goodwin’s statements to Officer Thomas, there is a reasonable probability that the jury would have changed their assessment of Currie’s credibility and their verdict.” Id. at *10.
, On appeal, the respondent asserts that the district court failed to give the state court’s lack-of-prejudice finding true AED-PA deference and instead substituted its own evaluation of Currie’s credibility. We agree and hold that, although Wright’s trial counsel’s performance was deficient, the state court’s determination that Wright was not prejudiced by the deficiency was not unreasonable.
The district court correctly reviewed the deficiency prong de novo. See Rayner v. Mills, 685 F.3d 631, 636-39 (6th Cir. 2012) (analyzing the continued vitality of the rule that “AEDPA deference does not apply to review of the Strickland prong not relied upon by the state court” *408 in light of Harrington and concluding that this standard remains correct). Deficient performance is that which falls below an objective standard of reasonableness. Strickland, 466 U.S. at 688, 104 S.Ct. 2052.
The Sixth Amendment affords criminal defendants the right to confront the witnesses against them. U.S. Const, amend. VI. Under the Confrontation Clause, a testimonial statement of a witness who does not testify at trial cannot be'introduced for its truth unless the witness is unavailable and the defendant had a prior opportunity to examine the witness. Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In the present case, Goodwin, the deceased victim, was unavailable but Wright did not have a prior opportunity to examine him. Therefore, the admission of Goodwin’s statements to Officer . Thomas violated the Confrontation Clause if the statements were testimonial in nature. Id. The Supreme Court has formulated this test:
Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Testimony that is volunteered, rather than elicited through interrogation, can also be testimonial. Id. at 822 n.1, 126 S.Ct. 2266 (“The Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation.”).
The district court correctly found Goodwin’s statements to be testimonial. Goodwin was not in the midst of an ongoing emergency when he flagged down Officer Thomas, and the primary purpose of his statements was to “establish or prove past events potentially relevant to later criminal prosecution.” Id. at 822, 126 S.Ct. 2266. Officer Thomas did not interrogate him; rather, Goodwin provided the information voluntarily. See id. at 822, 126 S.Ct. 2266 n.1. We conclude that the Confrontation Clause violation was obvious, and Wright’s trial counsel was objectively unreasonable for failing to object on this ground.
That determination does not end the inquiry, however. To show that he was prejudiced by his counsel’s deficient performance, Wright “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. “[A] federal habeas court may not issue the writ simply because that court' concludes in its independent judgment that the state-court decision applied Strickland incorrectly.” Woodford, 537 U.S. at 24-25, 123 S.Ct. 357.
Wright first claims that the state court applied the wrong legal standard, contrary to Strickland, when it decided that admission of Goodwin’s statements was not “outcome determinative.” In analyzing Wright’s ineffective assistance of counsel claim, the state court first set out the correct standard: “the defendant must show ... that the deficiency was so prejudicial that there is a reasonable probability that but for counsel’s unprofessional errors the trial outcome would have been different.” People v. Wright, 2010 WL 5373811, *409 at *5. One paragraph later, however, it concluded that the error was not “outcome determinative.” Id. The Supreme Court distinguished between these two standards in Harrington, 562 U.S. at 111-12, 131 S.Ct. 770, but noted that “the difference between Strickland’s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest of cases.” Id. at 112, 131 S.Ct. 770 (internal quotation marks omitted). Because the state court articulated the correct standard when it began its analysis, and because this case is not one of those “rare” situations in which the “slight” difference between the standards matters, see id. we hold that the state court decision was not contrary to clearly established federal law.
Wright also claims that the state court unreasonably applied Strickland in finding that admission of Goodwin’s statements did not prejudice him because “Goodwin’s statements were the strongest evidence that the prosecution presented to corroborate Currie’s identification of Wright.” The state court’s reason for finding no prejudice from the erroneous admission of Goodwin’s statements was “the other evidence connecting defendant with the murder.” People v. Wright, 2010 WL 5373811, at *4. The other evidence it summarized was: Currie’s consistent identification of the perpetrators once he identified them; Currie’s testimony that he burned the drug house knowing Wright would blame Goodwin; the firearm expert’s testimony, which was consistent with Currie’s testimony; and Currie’s adamant testimony on re-direct that Wright asked him to burn the house, blamed Goodwin for it, and drove Worm and Black to the scene. Id. at *3-4.
In light of the deferential AEDPA standard, said to be “doubly deferential” in analyzing a claim under Strickland, Burt v. Titlow, — U.S. -, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013), we hold that the state court’s finding of no prejudice was not unreasonable. The expert testimony about firearms corroborated Currie’s testimony. Currie’s identifications were confident and consistent at trial. Further, although the state court apparently did not mention or rely on it, the jury could have found that Wright’s statements in the phone calls from the jail implicated him in the murder and supported a guilty verdict.
Confrontation Clause Claim
Wright argued on direct appeal that the admission of Goodwin’s statements violated his rights under the Confrontation Clause. The Michigan Court of Appeals reviewed for plain error because the issue was unpreserved, and held that the error did not affect the outcome of the trial. People v. Wright, 2010 WL 5373811, at *4. The respondent contends that Wright’s claim is procedurally defaulted and, regardless, is without merit because any Confrontation Clause violation was harmless. The district court found that the procedural default was excused by ineffective assistance of counsel and concluded that the error in admitting Goodwin’s statements was not harmless, for the same reasons that it articulated in its analysis of Strickland prejudice. Wright v. Rivard, 2015 WL 3441154, at *11.
Federal courts on habeas review are not required to analyze whether an issue was procedurally defaulted before deciding against the petitioner ■ on the merits, and we opt to begin by analyzing the merits of Wright’s claim. See Bales v. Bell, 788 F.3d 568, 573 (6th Cir. 2015). As discussed above, despite the existence of a Confrontation Clause violation, Wright is entitled to relief only if the violation “had substantial and injurious effect or influence in determining the jury’s verdict.” Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). In other *410 words, Wright must establish actual prejudice, and “[tjhere must be more than a reasonable possibility that the error was harmful.” Davis v. Ayala, — U.S. -, 135 S.Ct. 2187, 2198, 192 L.Ed.2d 323 (2015) (internal quotation marks omitted) (citing Brecht, 507 U.S. at 637, 113 S.Ct. 1710).
Our first step in analyzing Wright’s Confrontation Clause claim is to determine whether the state court adjudicated the merits of the claim such that AEDPA deference applies to the state court’s determination. 28 U.S.C. § 2254(d). The state court reviewed Wright’s Confrontation Clause claim for plain error using the standard from United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). See People v. Wright, 2010 WL 5373811, at *4 (citing People v. Carines, 460 Mich. 750, 597 N.W.2d 130, 138-39 (1999) (adopting the rule from Olano for unpreserved claims of constitutional error)). Under Olano, a court should not grant relief on a forfeited claim unless there was (1) an error, (2) that was plain, (3) that affected substantial rights, and (4) that “seriously affectfed] the fairness, integrity or public reputation of judicial proceedings.” Olano, 507 U.S. at 732-36, 113 S.Ct. 1770. In most cases, an error affected substantial rights if it affected the outcome of the trial-court proceedings. Id. at 734-35, 113 S.Ct. 1770.
In ruling on Wright’s appeal, the state court considered only the third portion of the plain-error analysis, ie., whether any Confrontation Clause violation affected substantial rights. People v. Wright, 2010 WL 5373811, at *4. It determined that Wright had not established that admission of Goodwin’s statements affected the outcome of the case. Id. The portion of the plain-error analysis the Michigan court undertook in this case was analogous to a harmless-error analysis because its conclusion that the error did not affect the outcome of the case is another way of saying that the error was not harmful. In Davis v. Ayala, the Supreme Court held that a state court’s harmless-error analysis is an adjudication on the merits. 135 S.Ct. at 2198. Therefore, we find that the state court’s determination in this case adjudicated the merits of Wright’s claim for purposes of AEDPA,[1] and we will defer to it if it is not contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).
The state court determined that admission of Goodwin’s statements did not affect the outcome of Wright’s trial. People v. Wright, 2010 WL 5373811, at *4. Although it did not articulate the harmless-error standard from Brecht, it conducted the same analysis when assessing whether the error was outcome-determinative. Although the standard for prejudice under Strickland is more onerous than the Brecht standard, see Kyles v. Whitley, 514 U.S. 419, 435-36, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), our previous analysis of Strickland prejudice applies to the assessment of whether the Confrontation Clause violation was harmless error under Brecht. As with our ruling above regarding Wright’s ineffective-assistance claim, we hold that the state court’s determination that he was not prejudiced by the admission of Goodwin’s statements was not unreasonable.
CONCLUSION
Wright’s Sixth Amendment right to confrontation was violated when the trial
*411 court admitted Goodwin’s statements to Officer Thomas, and Wright’s counsel rendered ineffective assistance by failing to object to this violation. However, Wright is not entitled to habeas relief because the state court’s determination that these violations did not affect the outcome of the trial was not contrary or an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence. Accordingly, we must REVERSE the district court’s conditional grant of the writ and REMAND the case for such further proceedings as are necessary.

. Our opinion should not be read as holding that the plain-error and harmless-error analy-ses are equivalent or that every state-court plain-error analysis is an adjudication on the merits.