RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0238p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ROBERT WILSON,

        *Petitioner-Appellant,*

    *v.*

EDWARD T. SHELDON, Warden,

        *Respondent-Appellee.*

No. 16-3981

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:12-cv-00014—James S. Gwin, District Judge.

Decided and Filed:  October 26, 2017

Before:  SUTTON, DONALD, and THAPAR, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Matthew M. O'Rourke, MILLER JOHNSON, Grand Rapids, Michigan, for Appellant.  Jonathan R. Khouri, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

BERNICE BOUIE DONALD, Circuit Judge.  Petitioner Robert Wilson appeals the district court's dismissal of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons that follow, we **AFFIRM** the district court's denial of habeas relief.

I.

*A.      Factual Background*

Wilson was convicted of murdering Brenda Navarre in 2008 and sentenced to 15 years to life. Navarre, a confidential informant for the Toledo Police Department's ("TPD") Vice Narcotics Unit, was found unresponsive and bleeding from the head on December 1, 1993. A bloody, 110-pound boulder was found near her body. Navarre died several days later. Autopsy results showed that Navarre died of blunt force trauma to the head.

TPD misclassified the offense as a felonious assault, rather than a homicide after Navarre died from her injuries, and as a result destroyed the relevant evidence from the scene once the statute of limitation for felonious assault had expired. The case remained unsolved and was eventually classified as a "cold case."

Over a decade later in 2005, Janet Wilson, Wilson's wife, met with TPD to discuss Wilson's possible involvement in Navarre's murder. Sergeant Lou Vasquez of the TPD was investigating a robbery involving Ms. Wilson's grandson, and after the investigation concluded, Ms. Wilson contacted Sergeant Vasquez to discuss Navarre's murder. Following multiple conversations, Ms. Wilson made a formal statement in August 2006. Subsequently, Detective Bart Beavers, of the TPD's Cold Case Unit, reopened Navarre's case. Detective Beavers spoke with Ms. Wilson seven or eight times about the case. Detective Beavers discovered that Navarre's murder had been misclassified as a felonious assault and never properly categorized as murder after she died from her injuries. As a result of the miscategorization, the evidence found at the scene had been destroyed.

Ms. Wilson testified against Wilson at trial, but owing to Wilson's assertion of spousal privilege, her testimony was limited to acts and communications by Wilson in the presence of a third party. Ms. Wilson's son, Alfonso Davis, also testified, specifically about the night of the murder, during which Wilson made comments about confidential informants. Davis testified that Wilson told him that "snitch bitches die," and "he had to kill the snitch bitch," and finally, that he had "dropped a brick on her head." Sergeant Vasquez and Detective Beavers both testified

that Ms. Wilson's statements had been consistent during the investigation and at trial, but neither testified to the specific content of her comments to them.

### B.       Procedural Background

After a four-day jury trial, Wilson was convicted of murder and sentenced to fifteen years to life.  On October 23, 2008, Wilson appealed his conviction to the Ohio Court of Appeals, arguing that the State had violated his due-process rights by failing to retain incriminating physical evidence.  The court affirmed his conviction and concluded that the physical evidence, including the bloody boulder, was not "materially exculpatory." *State v. Wilson*, No. L-08-1380, 2010 WL 2025521, at *6 (Ohio Ct. App. May 21, 2010).  Wilson appealed to the Ohio Supreme Court, which declined jurisdiction. *State v. Wilson*, 126 Ohio St.3d 1598 (Ohio 2010) (table).

On November 18, 2009, while Wilson's appeal was pending, Wilson filed a "motion to vacate or set aside judgment of conviction or sentence" in the trial court. *State v. Wilson*, No. L-13-1210, 2014 WL 1343694, at *2 (Ohio Ct. App. Mar. 28, 2014). Wilson argued that the state failed to adhere to discovery obligations under Ohio Crim. R. 16(D) which deprived him of a fair trial as a result of the police department's destruction of physical evidence. *Id.* On April 29, 2011, the trial court denied Wilson's motion for post-conviction relief as untimely. *Id.*

While Wilson's direct appeal was pending, he also filed an application to re-open his appeal under Ohio Appellate Rule 26(B)(1), in which he argued ineffective assistance of counsel. The Ohio Court of Appeals denied his application, and the Supreme Court of Ohio dismissed his subsequent appeal.  *Wilson v. Sheldon*, No. 3:12-cv-14, 2016 WL 4225571, at *1 (N.D. Ohio Aug. 11, 2016).

Wilson filed his habeas petition on January 4, 2012, raising ten grounds for relief. *Id.* at *2.  The Respondent filed a Return of Writ on March 6, 2015.  On June 1, 2016, the magistrate judge filed a Report and Recommendation ("R&R"), in which he recommended dismissing three grounds for relief as procedurally defaulted and denying six grounds of relief because the state appellate court "did not unreasonably apply clearly established federal law in rejecting Plaintiff's claims." *Id.*  Wilson filed objections to the R&R on three grounds:

1. Ground One – Violation of Due Process for Improper Bolstering of the Credibility of Witnesses;

2. Ground Two – Petitioner's Due Process rights were violated when he was denied the right to review Mrs. Wilson's grand jury testimony;

3. Ground Four – Mr. Wilson's right to due process was violated when State failed to preserve material evidence.

*Id.* The district court overruled Wilson's objections, adopted the R&R, and dismissed Wilson's § 2254 petition. The court granted a certificate of appealability on the three issues raised in Wilson's objections. *Id.* at *10. Wilson now appeals.

II.

In habeas proceedings, we review a district court's legal conclusions "de novo and its findings of fact for clear error." *Akins v. Easterling*, 648 F.3d 380, 385 (6th Cir. 2011) (quoting *Braxton v. Gansheimer*, 561 F.3d 453, 457 (6th Cir. 2009)). Wilson's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") because the petition was filed after AEDPA's effective date. *See id.* (citing *Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997)).

Under AEDPA, a federal court may not grant a writ of habeas corpus on a claim that has been adjudicated on the merits by a state court unless the state court's adjudication of that claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under the first prong of § 2254(d), a state court decision is contrary to clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Importantly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). "Rather, that application must be 'objectively unreasonable.'" *Id.* (citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations omitted). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Lett*, 559 U.S. at 773 (internal citations omitted).

## A.     Admission of Prior Consistent Statements

Wilson argues that the statements from Sergeant Vasquez and Detective Beavers regarding Ms. Wilson's prior consistent statements were improperly admitted because they were hearsay statements which were made after Ms. Wilson's motive to lie arose, which thereby denied Wilson due process of law. Respondent argues that admission constituted a state evidentiary ruling that does not warrant habeas relief.

With regard to evidentiary rulings, the standard for habeas relief is not easily met. "[F]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001). "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Moreover, such rulings "are usually not to be questioned in a federal habeas corpus proceeding." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988)). Even if errors are made in the application of state law, "[such] errors . . . especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983). If a ruling is especially egregious and "results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citing *Coleman*, 244 F.3d at 542). Importantly,

however, as a general matter, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause. *Id.*

Here, the district court and magistrate judge concluded that the admission of Sergeant Vasquez and Detective Beavers' testimonies were not contrary to federal law and therefore did not rise to the level fundamental unfairness, *Wilson*, 2016 WL 4225571, at *3-4, and we must agree.

Wilson argues that Sergeant Vasquez's and Detective Beaver's testimonies regarding Ms. Wilson's prior statements were hearsay and that the state trial court's ruling against him was contrary to Supreme Court precedent and denied him a fundamentally fair trial. The district court summarized the officers' interactions with Ms. Wilson and subsequent testimony at trial in Ohio state court as follows:

> Sergeant Vasquez and Detective Beavers met with Janet Wilson a number of times throughout Ms. Navarre's murder investigation. At trial, Janet Wilson's credibility as a witness was called into doubt. Sergeant Vasquez and Detective Beavers thus testified that Janet Wilson's trial testimony was "consistent" and "always the same" as the information she told them throughout the investigation.

*Id.* at *4.

Wilson cites Ohio Rule of Evidence 801(D)(1)(b) in support of his argument that the officers' statements were inadmissible hearsay. Ohio Evidence Rule 801(D)(1)(b) states that a "statement is not hearsay if . . . [t]he declarant testifies at trial . . . and the statement is . . . consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive." Ohio Evid. R. 801(D)(1)(b). The Ohio state appellate court rejected Wilson's claim on appeal, explaining that the officers' testimony did not include narration that would amount to hearsay, but rather that the testimony commented on Ms. Wilson's consistency throughout her interactions with them:

> The crux of appellant's first contention is that testimony offered by the state, through Sergeant Vasquez and Detective Beavers, constituted inadmissible

hearsay. Essentially, appellant claims that this testimony bolstered the veracity of [] Janet Wilson. We disagree. Evid. R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted."

It is well settled that testimony as to the consistency of a witness's prior statements, not offered to prove the veracity of those statements, is not inadmissible hearsay under Ohio law. In *Meriwether*, the appellate court held that "[t]estimony that a witness's previous statement during an investigation was consistent with his trial testimony does not narrate the witness's previous statement and does not, therefore, violate the hearsay rule." *State v. Meriwether* (Mar. 15, 1996), 2d Dist. No. 15079.

The state's witnesses never narrated Wilson's previous statements. Instead, they commented on whether those statements were consistent with what she had related to them during the investigation. We find no indication that the trial court's decision to admit the testimony was unreasonable, arbitrary, or unconscionable. Appellant's first assignment of error is found not well-taken.

*Wilson*, 2010 WL 2025521, at *3-4. The officers' statements were plainly not offered to prove the truth of Ms. Wilson's statements. The statements were offered to rehabilitate Ms. Wilson's credibility, and as the district court noted, "trial courts have greater discretion to admit prior consistent statements to rehabilitate an impeached witness by clarifying her statements alleged to be unreliable, than if the statements are offered for their truth." *Wilson*, 2016 WL 4225571, at *4 (quoting *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 730 (6th Cir. 1994)).

In conducting habeas review, we are "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Wilson's only legal support is *Tome v. United States*, 513 U.S. 150 (1995), which dealt with a child's prior consistent statement under the Federal Rules of Evidence. 513 U.S. at 153-54. This support fails for a number of reasons. To begin, the Federal Rules of Evidence do not apply to state criminal proceedings. Further, *Tome* did not create a constitutional limitation on the admission of prior consistent statements. Finally, Wilson's argument fails because rehabilitation of a witness's credibility is not subject to Federal Rule 801. *Engebretsen*, 21 F.3d at 730. Wilson has not pointed to any other Supreme Court case to support his position that admission of the officers' testimony regarding Ms. Wilson's prior consistent statements deprived

him of a fundamentally fair trial.**¹** Therefore, under the narrow standards outlined above, Wilson's habeas relief on this claim fails.

We also note that even if the Ohio state courts were to have found that the officers' testimony constituted hearsay, while we would not condone its admission, we would not question a state supreme court's determination that the error was harmless. *Olson v. Little*, 604 F. App'x 387, 406 (6th Cir. 2015) ("We express no view as to the soundness of [a] state court's ruling, for we do not sit as a super state appellate court when reviewing a state-court judgment on habeas.").

### B. Suppression of Grand Jury Testimony

Wilson claims that his *Brady* rights were violated because the trial court refused to grant him access to the grand jury transcript of Ms. Wilson's testimony, which allegedly contained impeachment evidence. A few observations about the backdrop to this claim bear mention.

Defendants are not ordinarily entitled to grand jury transcripts because grand jury proceedings are generally kept secret. But Ohio law, like federal law, provides defendants access to the transcripts when a defendant shows a "particularized need" for them. Defendants may access grand jury testimony in Ohio if it contains evidence that could be used to impeach a prosecution's witnesses. *State v. Greer*, 66 Ohio St. 2d. 139, 151 (1981). Defendants may also access grand jury testimony if there are grounds for dismissing the indictment because of matters that occurred before the grand jury. Ohio R. Crim. P. 6(e). When a defendant makes either request, the trial court will generally review the transcripts *in camera* to determine the existence of impeachment evidence or the existence of grounds for dismissing the indictment. *Greer*, 66 Ohio St. 2d. at 150.

At trial, Wilson asked for the grand jury transcript because he thought the transcript would show that he was indicted on the basis of privileged spousal testimony. The trial court reviewed the transcript *in camera* and determined that there was plenty of non-privileged

---

**¹**Wilson also argues that Ms. Wilson's acceptance of a $5,000 Crime Stoppers award related to the investigation of Navarre's murder gave her a motive to lie under Ohio Rule of Evidence 801(D)(1). As we have already found that the officers' testimony was properly admitted to rehabilitate Ms. Wilson's credibility, we need not address this argument.

testimony that supported the indictment. It therefore refused Wilson's request for the transcripts. Wilson never asked the trial court to review the transcripts for evidence he could use to *impeach* his wife at trial. Had he done so, the state court would have been required to review the transcripts *in camera* to determine if the transcripts contained any such evidence. *Id.* at 151.

It's also important to note that the state appellate courts never passed on this *Brady* claim because Wilson never raised it in state court. He raised the claim for the first time on federal habeas and thus has failed to exhaust it. 28 U.S.C. § 2254(b)(1). Even so, we have discretion to reject the claim on the merits, *id.* at § 2254(b)(2), especially since the State never moved to dismiss the claim on exhaustion grounds.

Though grand jury proceedings generally need to remain private, this must be weighed against a defendant's right to review exculpatory evidence under *Brady v. Maryland.* 373 U.S. 83, 87-88 (1963). Under *Brady*, a defendant must show "(1) suppression by the prosecution after a request by the defense, (2) the evidence's favorable character for the defense, and (3) the materiality of the evidence." *Moore v. Illinois,* 408 U.S. 786, 794 (1972). *Brady* imposes a duty to disclose exculpatory evidence "even though there has been no request by the accused." *Strickler v. Greene,* 527 U.S. 263, 280 (1999) (citing *United States v. Agurs,* 427 U.S. 97, 107 (1976)). Impeachment evidence is also encompassed within the *Brady* rule because a jury's reliance on the credibility of a witness can be decisive in determining the guilt or innocence of the accused. *See United States v. Bagley,* 473 U.S. 667, 676 (1985).

Even if we assume that Ms. Wilson's grand jury testimony should have been produced, Wilson cannot show that he was prejudiced by the prosecution's failure to disclose. To establish prejudice, Wilson must show that "there is a reasonable probability that the result of the [proceeding] would have been different if the suppressed documents had been disclosed to the defense." *Strickler*, 527 U.S. at 289. We do not see how any such evidence could have made a difference. Ms. Wilson testified that her trial testimony and grand jury testimony were "consistent." Wilson had plenty of opportunities to challenge the credibility of her testimony at trial on other grounds. He did so and the jury convicted him anyway. This *Brady* claim fails.

As Wilson has failed to establish materiality under *Brady*, he was not entitled to grand jury transcripts. The state court's decision was not a violation nor an unreasonable application of Supreme Court precedent, and therefore the claim fails.

### C.     *Failure to Preserve Material Evidence*

The final issue on appeal is whether the State failed to preserve material evidence and whether this violated Wilson's due process rights to a fundamentally fair trial. Wilson argues that the State failed to preserve "potentially useful" evidence in violation of *Arizona v. Youngblood*, 488 U.S. 51 (1988). In order to prove a violation of due process under this standard, a defendant must show 1) bad faith on the part of the police, 2) that the exculpatory value of the evidence was apparent before its destruction, and 3) that the defendant would be unable to obtain comparable evidence by any other reasonably available means. *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996) (citing *Youngblood*, 488 U.S. at 57-58). "While a showing of bad faith is not necessary to establish a constitutional violation where the state fails to disclose material exculpatory evidence, a showing of bad faith is required to establish a constitutional violation where the state fails to preserve evidentiary material that might have been exculpatory." *Swan v. Meko*, No. 16-5120, 2017 WL 3270780, at *2 (6th Cir. May 23, 2017) (citing *Youngblood*, 488 U.S. at 57-58). In order to prove bad faith, "a defendant must prove 'official animus' or a 'conscious effort to suppress exculpatory evidence.'" *Id.* (citing *Jobson*, 102 F.3d at 218). Therefore, Wilson must show that the police acted in bad faith by failing to preserve the boulder murder weapon, that the exculpatory value was evident before the boulder's destruction, and that he was unable to obtain comparable evidence.

The district court held that Wilson failed to meet *Youngblood*'s heavy burden and that the TPD's failure to re-categorize the evidence is at most a demonstration of negligence or gross negligence. *Wilson*, 2016 WL 4225571, at *9. Wilson narrates a series of events of officer activity, which relate to the failure to reclassify the evidence. Wilson concludes that in the absence of any other argument, this demonstrates bad faith toward Wilson. We cannot agree. Nothing in Wilson's version of events suggests a conscious effort to destroy exculpatory evidence or bad faith on the part of the police. Given that Wilson cannot prove this element, we

need not reach the other *Youngblood* factors for potentially useful evidence. The state court's decision was not contrary to, or an unreasonable application of clearly established federal law.

## III.

The state court's adjudication of Wilson's claims on the merits did not result in an unreasonable application of clearly established law under AEDPA. We **AFFIRM**.