NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0185n.06

No. 20-1058

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| NIGEL KINTE WRIGHT, | ) | |
| | ) | **FILED** |
| Petitioner-Appellant, | ) | Apr 13, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| STEVEN RIVARD, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE:   DAUGHTREY, MOORE, and STRANCH, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.   More than a decade ago, Travis Goodwin was murdered in Detroit, Michigan.  Petitioner Nigel Wright was arrested, tried, and convicted for the crime and was sentenced to life in prison without the possibility of parole.  Now, for the second time, we consider an aspect of the petition Wright filed seeking habeas corpus relief.  In this appeal, he challenges the district court's determination that the admission into evidence of both a statement the victim made to his mother and a statement the victim made to a police officer did not violate his due process rights.  We find no merit to this claim of constitutional error and affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2016, we addressed an appeal from a district court ruling on another issue raised in Wright's habeas corpus petition.  *See Wright v. Burt (Wright III)*, 665 F. App'x 403 (6th Cir. 2016).

At that time, we summarized the relevant facts that were adduced during the murder trial. We now reiterate a portion of that summary:

> Early in the morning on December 29, 2007, Travis Goodwin was shot while sitting in a van parked outside of his mother's house. He died 12 days later from his wounds. Wright was charged with aiding and abetting the shooters, two men known as Worm and Black, by driving them to and from the shooting.
>
> The primary witness for the prosecution was Dawayne Currie, who lived near the scene of the shooting. At trial, Currie testified to the following: He was playing video games with his six-year-old daughter around 2:00 AM when he saw Goodwin pull up and park the van in a driveway. About 20 minutes later, Currie heard gunshots and took his daughter to the back of the house before returning to look out the front window. He saw Black backing away from the van and firing a round with an AK47 assault rifle, Worm getting into the passenger side of Wright's black Charger holding a shiny handgun, and Wright sitting in the driver's seat. Black and Worm were wearing ski masks but he knew them from their manner of walking and distinctive body shapes. Even though it was dark and the car's windows were lightly tinted, Currie could see Wright's face and his braided hairstyle. Currie's testimony that the shooters used a handgun and an AK47 assault rifle was consistent with the type of shell casings found at the scene. Currie also acknowledged that, a few weeks prior to Goodwin's murder, Wright had paid him $100 to burn a drug house in the neighborhood that belonged to Worm. Currie did so knowing that Wright was going to blame Goodwin. Currie testified that Goodwin was involved in the drug business and had conflicts with Wright, Black, and Worm because of it.
>
> Currie's testimony contained some inconsistencies. Although he testified that he told Goodwin's mother, Alice Smiley, who shot her son before Goodwin's funeral, Smiley testified that Currie never told her who killed her son. Currie testified that he saw Wright's face the night of the shooting, but he told defense counsel before trial that he never saw Wright's face. Currie also admitted at trial that he had lied under oath at the preliminary examination regarding his knowledge of any conflict between Wright and Goodwin. Despite the inconsistencies in his testimony, Currie was consistent in his identifications of the perpetrators. On redirect, Currie testified adamantly that Wright was the person who asked him to burn the drug house, blamed Goodwin for it, and drove the black Charger to and from the shooting.
>
> Other than Currie's testimony, another component of the prosecutor's case-in-chief was recordings of phone calls Wright made from jail. The prosecutor argued that Wright admitted involvement in the murder when he made statements such as "even if I didn't do it," "he was out there the night when Trav got shot. . . . I remember," and "they know I didn't do no shooting." Wright also told his girlfriend of his decision to take out his braids and change his hairstyle. In the recordings, Wright alluded to giving Currie and his father something for not going to court or for going to court and telling the truth. Currie testified that Wright offered him money not to come to court.

A third component of the prosecutor's case, and the one that gave rise to Wright's habeas claims at issue in this appeal, was the testimony of Officer Thomas. He testified that, less than one month before his death, Goodwin flagged him down while he was on patrol and told him that Goodwin had received threats from Wright, Damien Bell, and Tommy Dickey, who were expanding their drug-sales territory. Defense counsel objected to the testimony as extremely prejudicial and biased, but the trial court held that the testimony did not present a hearsay problem and could be admitted. Defense counsel impeached Officer Thomas by eliciting that he did not put Goodwin's concerns in a police report or seek out the individuals making the threats and that he was close to Goodwin's family. The prosecutor's closing argument referenced Officer Thomas's testimony. She stated, "Travis Goodwin reached out to a police officer and said trouble brewing; I'm worried about—I'm worried about somebody's going to hurt me," and "he named three people first of which was Nigel Wright."

*Id.* at 404–05.

Based upon that evidence, the jury convicted Wright of the first-degree murder charge, as well as of a charge of carrying a concealed weapon. The state trial court sentenced Wright to life without parole for the murder conviction and to two-to-five years in prison for the concealed-weapon conviction.

Wright raised numerous allegations of trial error when appealing his convictions to the Michigan Court of Appeals. Included among those issues was one alleging that admission into evidence of Travis Goodwin's statements to Officer Thomas violated Wright's constitutional right to confront the witnesses against him. He also argued that admission of those statements, as well as admission into evidence of a statement allegedly made by Goodwin to his mother, denied him his constitutional right to due process of law.

That second instance occurred during the direct examination by the prosecutor of Alice Smiley, Goodwin's mother. While questioning Smiley, the prosecutor elicited testimony that the day after the burning of the neighborhood drug house—which happened a few weeks prior to Goodwin's murder—Goodwin told his mother that he knew that the house that burned belonged to Worm and said, "I know they gonna think I did it." (Page ID 715)

Citing a Michigan Rule of Evidence, the state appellate court found the challenged statements to be hearsay because "they were clearly made by someone other than the declarant and were offered to prove the truth of the matter asserted. MRE 801(c)." *People v. Wright (Wright I)*, No. 288975, 2010 WL 5373811, at *3 (Mich. Ct. App. Dec. 28, 2010). Nevertheless, the Michigan Court of Appeals concluded that the error in admitting the statements did not affect the outcome of the trial given the other evidence of Wright's guilt. *Id.* at *3–4. Furthermore, the court did not address the Confrontation Clause allegation because Wright had not objected to the statements on that ground, *id.* at *4, and refused to consider the due process claim because Wright "provide[d] no analysis . . . to support his assertion that the trial court's error under the rules of evidence deprived him of due process." *Id.* at *1 n.1.

The Michigan Court of Appeals thus affirmed Wright's convictions, and the Michigan Supreme Court declined to review the matter. Having exhausted his state-court avenues for relief, Wright filed his habeas corpus petition in federal district court. The district court concluded that, although Wright had procedurally defaulted his Confrontation Clause claim, the ineffective assistance provided by his counsel in failing to object to Thomas's testimony on Confrontation Clause grounds excused that procedural default. *Wright v. Rivard (Wright II)*, No. 2:12-CV-14164, 2015 WL 3441154, at *11 (E.D. Mich. May 28, 2015). Finding that Wright was prejudiced by the constitutional violation, the district court granted Wright a conditional writ of habeas corpus. *Id.*

On appeal to this court, all three judges on the panel agreed that Wright established that the admission into evidence of Thomas's testimony of his conversation with Goodwin violated the protections afforded Wright under the Confrontation Clause of the Sixth Amendment to the United States Constitution. *Wright III*, 665 F. App'x at 408. Even so, two judges then determined that

Wright was not prejudiced by that error given that Currie had been consistent in his identification of Wright as one of the individuals involved in the murder, that a firearms expert confirmed Currie's testimony regarding the type of weapons used during the crime, and that the jury reasonably could have concluded that Wright's calls from jail implicated him in the killing. *Id.* at 409–10. We thus reversed the conditional grant of the writ of habeas corpus and remanded the matter to the district court for such further proceedings as were necessary. *Id.* at 411.

On remand, the district court noted that its earlier ruling, as well as the Sixth Circuit's opinion reversing that ruling, "addressed only the admission of Thomas's testimony." *Wright v. Rivard (Wright IV)*, No. 2:12-CV-14164, 2020 WL 134134, at \*4 (E.D. Mich. Jan. 13, 2020). Because no court thus had addressed "whether admission of Goodwin's statements to *Smiley*, considered in conjunction with his statements to Thomas, violated the Due Process Clause," *id.* (emphasis added), the district court felt justified in deciding "whether the combined impact of those statements rendered Wright's trial so fundamentally unfair as to violate Due Process." *Id.*[1] In the end, the district court did not consider Smiley's testimony "sufficient to tip the balance in favor of finding a due process violation when Thomas's [testimony] alone was harmless." *Id.* at \*5. The district court explained:

> The extent of Smiley's improperly admitted testimony was limited: Goodwin told her that "they" were going to blame him for the drug house fire. This testimony, to an extent, reiterated testimony already properly before the jury. The acrimonious nature of Goodwin's relationship with Wright was introduced through Smiley's properly admitted testimony that Goodwin and Wright were "enemies or not so good friends." Similarly, Currie's properly admitted testimony that Goodwin would be blamed for the arson fire was more extensive and incriminating tha[n] Smiley's improperly admitted testimony.

> As held by the Sixth Circuit, the admission of Thomas's testimony about Goodwin's out-of-court statements, standing alone, was harmless error. Goodwin's statements to Thomas were far more significant than his statements to Smiley.

---

[1] In *Wright IV*, the district court also addressed a number of other issues previously raised by Wright in his habeas corpus petition, issues that are not before us in this appeal.

> Smiley's improperly admitted testimony, limited as it was, does not meaningfully impact the harmless error analysis. Wright fails to show that the combined errors of admitting Goodwin's statements to Thomas and Smiley were not harmless. The Court finds that these errors do not implicate "fundamental conceptions of justice" and, therefore, do not violate the Due Process Clause.

*Id.* (citations omitted).

Ultimately, the district court denied Wright's petition for a writ of habeas corpus on all grounds. *Id.* at *9. The district court did grant Wright a certificate of appealability on the due process claim, however, noting that "[j]urists of reason could debate the Court's holding regarding Wright's due process claim." *Id.* at *8.

## DISCUSSION

At the outset, it is important to clarify exactly which issues are before us on appeal and which issues are not. In *Wright III*, we determined that admission of Thomas's trial testimony regarding his conversation with Travis Goodwin violated Wright's Confrontation Clause rights. That determination now is the law of the case and will not be revisited in this appeal. *See, e.g.*, *Dixie Fuel Co., LLC v. Dir., Office of Workers' Comp. Programs*, 820 F.3d 833, 843 (6th Cir. 2016) (holding that "findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation" (citation omitted)). Likewise, our conclusion that that constitutional violation, by itself, was harmless error also is not properly before us at this time. What we are called upon to review in this appeal, however, is Wright's assertion that Thomas's improperly admitted testimony, *in conjunction with* that portion of Smiley's testimony that also was admitted improperly, denied him a fundamentally fair trial in violation of the Due Process Clause of the United States Constitution.

**Standard of Review**

"We review de novo a district court's decision to grant or deny a petition for a writ of habeas corpus." *Joseph v. Coyle*, 469 F.3d 441, 449 (6th Cir. 2006) (citation omitted). Pursuant

to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA), habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" in state court unless that decision:  (1) was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) was based on an unreasonable determination of facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).

Here, however, the respondent warden argues that the claim Wright now asks us to review was not adjudicated on the merits but was procedurally defaulted.  Generally, we "may not review federal claims that were procedurally defaulted in state courts."  *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).  A petitioner procedurally defaults a claim when "(1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default."  *Tolliver v. Sheets*, 594 F.3d 900, 927 n.11 (6th Cir. 2010) (citation omitted).

According to the warden, "Wright failed to comply with a state procedural rule that requires defendants to properly rationalize the basis for claims and provide adequate citation to supporting authority."  Appellee Br. at 18.  Indeed, as we have noted, the Michigan Court of Appeals held that Wright abandoned his due process claim because he "provide[d] no analysis . . . to support his assertion that the trial court's error under the rules of evidence deprived him of due process."  *Wright I*, 2010 WL 5373811, at *1 n.1.  We disagree with that conclusion, however, and find that Wright did *not* fail to comply with a Michigan procedural rule.

The district court too found the warden's argument less than persuasive, stating, "The state court's conclusion that Wright abandoned this claim seems at odds with his substantial brief on

appeal." *Wright IV*, 2020 WL 134134, at \*3. In fact, the first issue in Wright's brief before the Michigan Court of Appeals was captioned, in part, "THE TRIAL COURT VIOLATED DUE PROCESS BY ADMITTING THE HEARSAY STATEMENTS OF THE DECEASED TO HIS MOTHER AND TO OFFICER THOMAS." (Page ID 1848) Although the discussion of that issue did include reference to Michigan state rules of evidence and Michigan court rulings on the admission of evidence, the brief also included the following argument (as written, without corrections):

> Due to its unreliability, the improper admission of hearsay evidence can violate constitutional due process protections regardless of whether it would independently violate the Confrontation Clause. US Const, Ams V, XIV; *See White v. Illinois*, 502 US 346, 363-364 (1992) (Thomas J., with Scalia J., concurring) ("Reliability is more properly a due process concern. There is no reason to strain the text of the Confrontation Clause to provide criminal defendants with a protection due process already provides them."); *see also United States v. Shoupe*, 548 F2d 636, 643-644 (CA 6, 1977) (admission of unreliable hearsay required reversal under due process clause because it extended beyond "permissible limits of fairness"); *United States v. Agular*, 975 F2d 45, 47 (CA 2, 1992) ("We may assume that facially unreliable hearsay would raise a due process issue….").

(Page ID 1853) In his more than 16 pages of argument on the issue, Wright also discussed the harmless-error test to be applied after the improper admission of hearsay evidence in violation of a defendant's due process rights, (Page ID 1861) and reiterated the federal constitutional principle that "[e]rrors which so infect the trial as to render it fundamentally unfair violate the right to due process of law. US Const, Am XIV; Const. 1963, art 1, § 17; *McKinney v. Rees*, 993 F2d 1378, 1380 (CA 9, 1993); *Michelson v United States*, 335 US 469, 475-6 (1948)." (Quoted as written without corrections.) (Page ID 1863–64)

The United States Supreme Court has made clear that habeas relief usually "does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citations omitted). Nevertheless, even state-court evidentiary rulings can rise to the level of a due process violation if they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people

as to be ranked as fundamental." *Wilson v. Sheldon*, 874 F.3d 470, 475–76 (6th Cir. 2017) (citations omitted). It was just such a showing that Wright was attempting to make before the Michigan Court of Appeals and the Michigan Supreme Court by discussing the impact upon him of the hearsay violations that occurred as a result of the state's overzealousness at trial. We thus conclude that Wright has not procedurally defaulted this issue on appeal.

Although we may review Wright's due process claim, we conclude that the admission into evidence of Goodwin's comments to his mother, even in conjunction with the evidence of Goodwin's comments to Thomas, do not offend some fundamental principle of justice. As we held previously, the admission of Thomas's testimony regarding his conversations with Goodwin, although error, was harmless in light of the other strong evidence of Wright's guilt. The additional consideration of Smiley's improper testimony does nothing to change that calculus. Smiley's challenged testimony simply noted that an unidentified "they" were planning to blame Goodwin for the arson of a neighborhood drug house. That same information, however, properly came before the jury in much-greater, more-incriminating detail through the testimony of Dawayne Currie. Thus, regardless of Smiley's improperly admitted testimony and Thomas's improperly admitted testimony, other evidence justified the jury's verdict of guilt beyond a reasonable doubt. Furthermore, nothing in the record leads us to the conclusion that had the objectional testimony been kept from the jury, the finders of fact would have been likely to convict Wright of a lesser offense.

Because Wright cannot show that the challenged trial errors implicated some fundamental conception of justice, he cannot establish a violation of his due process rights. *See Dowling v. United States*, 493 U.S. 342, 352 (1990) (noting that for an evidentiary ruling to amount to a due process violation it must be "so extremely unfair that its admission violates 'fundamental

conceptions of justice'" (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977))).  We thus

find no merit to the sole issue raised by Wright in this appeal.

### CONCLUSION

For the reasons discussed, we do not find that the trial errors in Wright's prosecution were

sufficiently egregious to violate his due process rights.  We thus AFFIRM the judgment of the

district court denying Wright's petition for a writ of habeas corpus.